```
                    UNITED STATES DISTRICT COURT          FILED
                      DISTRICT OF SOUTH DAKOTA           APR 24 2014
                         WESTERN DIVISION
```

| | | |
|---|---|---|
| RANDALL J. MEIDINGER, | * | CIV. 12-5064-JLV |
| Plaintiff, | * | |
| vs. | * | ORDER DENYING MOTION TO |
| | * | DISQUALIFY COUNSEL (DOC. 84) |
| CITY OF RAPID CITY; and | * | |
| PETER RAGNONE; | * | |
| STEVE ALLENDER; | * | |
| JOHN LEAHY, and | * | |
| SAM KOOIKER, in their individual capacities. | * | |
| Defendants. | * | |

Pending is Plaintiff Randall Meidinger's motion to disqualify defense counsel. (Doc. 84).

## BACKGROUND

This is a 42 U.S.C. § 1983 case in which a Report and Recommendation was recently filed. The Recommendation is to grant the motions for summary judgment of all defendants except Peter Ragnone. Meidinger's claim under the Fourth Amendment survives against defendant Peter Ragnone. Ragnone is employed by Rapid City as a police officer with the police department.

Meidinger brings this motion to disqualify under SDCL Ch. 16-18, App., Rule 1.7 of the Professional Rules of Conduct. Rule 1.7 provides:

(a) Except as provided by paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

  (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

  (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

  (2) the representation is not prohibited by law;

  (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or same matter before a tribunal; and

  (4) each affected client gives informed consent, confirmed in writing.[1]

## DISCUSSION

**Standard.**

"The decision to grant or deny a motion to disqualify an attorney rests in the discretion of the trial court . . . . Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to 'particularly strict judicial scrutiny.'"[2] "A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary."[3] "The grant of a motion to disqualify an attorney as trial counsel is reviewed for an abuse of discretion.

---

[1] SDCL 16-18, Rules of Professional Conduct, Rule 1.7, Vol. 11, p. 645.

[2] *Harker v. C.I.R.*, 82 F.3d 806, 808 (8th Cir. 1996) (internal citations and quotation marks omitted).

[3] *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (internal citations omitted).

> An abuse of discretion ... can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."[4]

"Ultimately, the party seeking the disqualification of opposing counsel bears the burden of showing that disqualification is warranted. Although the moving party must satisfy a high standard of proof to sustain a disqualification motion, any legitimate doubts, which are created by the movant's proffer, must be resolved in favor of disqualification."[5]

**Analysis.**

Meidinger asserts an actual conflict exists because one attorney represents all defendants.[6] As reasons to support the motion:

(a). Meidinger suggests potential conflicts exist because "[t]he city will likely argue that Ragnone's conduct was outside the scope of City policy, or in contravention of the same, while Ragnone will likely argue mere negligent error to avoid a finding of reckless or intentional mens rea."[7] In response the defendants assert "the City has acknowledged Ragnone's actions were within the scope of his employment . . . ."[8]

(b). Meidinger suggests "[s]hould any party wish to negotiate a settlement, they would essentially be precluded from doing so as it would prejudice another defendant, a matter in conflict

---

[4]*Id.* (internal citations omitted).

[5]*Olson v. Snap Products, Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998) (internal citations omitted).

[6]Doc. 85, p. 4.

[7]Doc. 85, p. 4.

[8]Doc. 86, p. 3.

3

by its very nature where an attorney represents both said defendants."[9] Meidinger suggests further "[a]t trial, one defendant may wish to object to testimony while another defendant sees it as advantageous."[10] In response the defendants assert they are being defended under a single insurance policy which will pay any judgment and that they are "in a legal sense, united in interest."[11]

(c). Meidinger argues "Ragnone testified that an inspection policy or practice was in place, while Leahy testified that declarations at the Landfill scale were made on an honor system."[12] The defendants did not respond specifically to this argument, but urge generally "[t]here is no evidence before the Court that a conflict or potential conflict exists."[13] Defendants also assert no crossclaims have been filed and that nowhere has a defendant alleged another defendant was acting outside the scope of their employment with the City.[14]

First, it is observed the motion is moot given that the Recommendation is to grant the motions for summary judgment of all defendants except for Ragnone. Ragnone is the lone remaining defendant, so there cannot be a conflict.

On the merits, Meidinger suggests potential conflicts, but identifies no actual conflict. Meidinger suggests that Ragnone and Leahy have testified contrary to each other about the existence of an inspection policy. The inspection policy is not a material, predicate fact about which there is a jury question under Meidinger's surviving Fourth Amendment claim that he was seized without

---

[9] Doc. 85, p. 4.

[10] Doc. 85, p. 4.

[11] Doc. 86, p. 3.

[12] Doc. 85, p. 5.

[13] Doc. 86, p. 6.

[14] Doc. 86, p. 2.

factually truthful evidence to support the grand jury indictment and the arrest warrant which was issued after the grand jury returned its indictment. While testimony about the inspection policy may be admissible at trial, the issues for trial are the true or false nature of Ragnone's testimony about Meidinger's confession and the true or false nature of Ragnone's testimony about sawdust as the exclusive alternate cover. That Ragnone and Leahy might testify contrary to each other about the inspection policy at trial does not create a conflict for counsel. If defense counsel advocates for or against the existence of an inspection policy at trial, choosing either option is not directly adverse to the best interests one client or the other client. It makes no difference to Ragnone or Leahy or any other defendant whether there is or is not an inspection policy which Meidinger was obligated or not obligated to follow. For the same reason there is not "a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client."[15]

The City has acknowledged all individual employee defendants were acting within the scope of their employment. The City is defending the *Monell* claim by arguing there was no violation of Meidinger's constitutional rights by anyone, as distinguished from arguing that Ragnone, or any defendant, was acting outside the scope of employment. The Recommendation to grant the City's motion for summary judgment is based upon the absence of a City custom or policy for police officers generally or Ragnone specifically to testify falsely. Defense of the City against the *Monell* claim does not require defense counsel to choose an option which is directly adverse to the best interests one client or another. Defense of the City does not require defense counsel to urge conflicting or potentially conflicting defenses among the defendants. That Ragnone or any other defendant was acting contrary to a City custom or policy is not the defense—the defense is that there

---

[15] Rule of Professional Responsibility 1.7(a)(2).

was no City custom or policy for police officers to testify falsely. Additionally, hypothetically pretending there was such a policy, the City has acknowledged Ragnone was acting within the scope of his employment, i.e. not in a manner contrary to the hypothetical City custom or policy.

Finally, defense counsel has acknowledged he is "well aware of the South Dakota Rules Of Professional Responsibility and the standards under Rule 1.7. " which provide:[16]

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>>
>> (2) the representation is not prohibited by law;
>>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or same matter before a tribunal; and
>>
>> (4) each affected client gives informed consent, confirmed in writing.

The defendants' untimeliness defense against the motion to disqualify has been considered but rejected. Issues relating to a lawyer's professional responsibility are appropriate for consideration at any time.

It is ORDERED that plaintiff's motion to disqualify defense counsel is DENIED both as moot and on the merits.

Dated April 24, 2014.

BY THE COURT:

*/s/ John Simko*
John Simko
United States Magistrate Judge

---

[16]Doc. 86, p. 7.

6