UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| RANDALL J. MEIDINGER, | ) | CIV. 12-5064-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| CITY OF RAPID CITY; | ) | |
| PETER RAGNONE, | ) | |
| STEVE ALLENDER, | ) | |
| JOHN LEAHY, and SAM KOOIKER, | ) | |
| in their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the court is a motion for summary judgment filed by the
City of Rapid City, Peter Ragnone, Steve Allender, John Leahy, and Sam
Kooiker ("defendants"). (Docket 38). Defendant Sam Kooiker also filed a
motion to dismiss. (Docket 44). The court referred these motions to Magistrate
Judge John E. Simko for a report and recommendation. (Docket 49). On April
23, 2014, Magistrate Judge Simko filed a report recommending the court grant
in part and deny in part defendants' motion for summary judgment. (Docket
90). Specifically, the magistrate judge recommended granting the motion for
summary judgment as to the City of Rapid City, Steve Allender, John Leahy
and Sam Kooiker. Id. The magistrate judge recommended granting the
motion for summary judgment by Peter Ragnone with regard to the Fourteenth
Amendment claims but denying the motion as it relates to the Fourth

Amendment claims.  Id.  The magistrate judge also recommended denying defendant Sam Kooiker's motion to dismiss.  Id.  Plaintiff and defendants timely filed objections.  (Dockets 93 & 94).  Defendants filed a response to plaintiff's objections.[1]  (Dockets 100).

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections.  Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1).  The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

For the reasons stated below, plaintiff's objections are overruled and defendants' objections are overruled in part and moot in part.  The court adopts the report and recommendation of the magistrate judge.

## A.   MAGISTRATE JUDGE'S FINDINGS OF FACT

Neither party made specific objections to the magistrate judge's findings of fact although the parties interpret testimony differently.  See Dockets 93 & 94. The magistrate judge's findings of fact are adopted by the court in accordance with 28 U.S.C. § 636(b)(1)(C).  Specific facts will be discussed to the extent they relate to defendants' and plaintiff's objections.

---

[1]Fed. R. Civ. P. 72(b)(2) allows a party to respond to an opposing party's objections.

**B.    MAGISTRATE JUDGE'S CONCLUSIONS OF LAW**

Defendants' objections to the magistrate judge's conclusions of law are:

1.    The magistrate judge erred by finding an issue of material fact existed regarding plaintiff's Fourth Amendment claims against Peter Ragnone.

2.    The magistrate judge erred in concluding Sam Kooiker was not entitled to legislative immunity.

(Docket 94 at p. 2).

Plaintiff's objections to the magistrate judge's conclusions of law are:

1.    The magistrate judge erred in finding the City of Rapid City, Sam Kooiker, John Leahy, and Steve Allender are entitled to qualified immunity.

2.    The magistrate judge erred in finding Peter Ragnone was entitled to qualified immunity as to plaintiff's Fourteenth Amendment claims against him.

(Docket 93 at p. 2).  Each objection will be addressed separately.

**C.    QUALIFIED IMMUNITY**

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009).

"To determine whether an official is entitled to qualified immunity we engage in a two-part analysis.  The 'threshold question' is whether, taking the facts in the light most favorable to the injured party, the alleged facts demonstrate that the official's conduct violated a constitutional right.  If a

3

violation could be made out on a favorable view of the parties' alleged facts, the next step is to ask whether the right was clearly established.  To determine whether the right is clearly established we ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008) (quotations omitted).

"The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences."  Id. (citation omitted).  "If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment."  Id. (citation omitted).

"[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to that specific constitutional provision, not under the rubric of substantive due process."  Moran v. Clarke, 296 F.3d 638, 646 (8th Cir. 2002) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)); see also Albright v. Oliver, 510 U.S. 266, 288 (1994) (Souter, J., concurring) (finding substantive due process should be reserved for otherwise "homeless substantial claims" and noting "the Court has resisted relying on the

4

Due Process Clause when doing so would have duplicated protection that a more specific constitutional provision already bestowed").

Mr. Meidinger's claims related to Mr. Ragnone's false testimony to the grand jury are covered by the protections afforded under the Fourth Amendment.  See Winslow v. Smith, 696 F.3d 716, 738 (8th Cir. 2012) (recognizing the right under the Fourth Amendment to be free from the use of false evidence to secure a conviction) (citing Napue v. Illinois, 360 U.S. 264, 269 (1959)).  Mr. Meidinger's claims related to a reckless investigation and manufactured evidence are not specifically covered under the Fourth Amendment and are appropriately considered under the due process clause of the Fourteenth Amendment.

**D.    DEFENDANTS' OBJECTIONS**

> **1.    Whether Peter Ragnone is entitled to summary judgment on plaintiff's Fourth Amendment claims.**

Judge Simko concluded there were genuine issues of material fact relating to testimony Mr. Ragnone gave to two grand juries.  (Docket 90 at p. 19).  Specifically, Judge Simko found Mr. Meidinger presented sufficient evidence to allow a reasonable inference Mr. Ragnone gave false testimony related to Mr. Meidinger's confession about knowingly cutting breaks to Fish drivers and that alternate cover was exclusively sawdust.  Id.  Based on these findings, Judge Simko recommended denying Mr. Ragnone's motion for

summary judgment on Mr. Meidinger's Fourth Amendment claim.  Id. at pp. 19-22.

Mr. Ragnone argues in his objections he had no "obligation to provide only the best version of facts" and contends his testimony to the grand juries was supported by Mr. Meidinger's statements.  (Docket 94 at pp. 2-3).  Mr. Ragnone argues the evidence Judge Simko relied on in finding an issue of material fact was "contradicted by Meidinger's own statements."  Id. at p. 9.

An individual has a constitutional right under the Fourth Amendment to be seized only upon "a truthful factual showing sufficient to constitute probable cause before an arrest warrant can issue."  (Docket 90 at p. 13) (quoting Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994)). Information to establish probable cause "must be truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true."  Moody, 23 F.3d at 1412.  "The threshold issue then is whether, viewed in the light most favorable to [Meidinger], the facts as alleged demonstrate that [Mr. Ragnone's] conduct violated a constitutional right."  McKinley, 519 F.3d at 813 (quotations omitted).

Mr. Meidinger contends Mr. Ragnone lied to the grand jury regarding material facts Mr. Ragnone knew were untrue at the time he testified.  Having reviewed the transcript of Mr. Ragnone's interview of Mr. Meidinger and the grand jury transcript and viewing those facts in a light most favorable to Mr.

6

Meidinger, the court finds there are genuine issues concerning material predicate facts.

Mr. Ragnone told the grand jury sawdust was the only alternate cover. As noted by the magistrate judge, the testimony implied "every load Fish delivered to the landfill which came from a source other than Merillat was necessarily fraudulent because the load could not possibly be sawdust." (Docket 90 at p. 21).  Mr. Ragnone allegedly knew this testimony was false because John Leahy informed Mr. Ragnone in an e-mail prior to Mr. Ragnone testifying before the grand jury that sawdust was not the only material which qualified as alternate cover.  (Docket 65-1 at p. 2).

Mr. Ragnone claims Mr. Meidinger himself believed sawdust was the only alternate cover and "cannot claim that Ragnone violated his constitutional rights by having the same understanding of alternate cover as Meidinger." (Docket 94 at p. 12).  Mr. Meidinger testified at his deposition he "generally understood" Mr. Ragnone thought alternate cover was sawdust.  (Docket 41-2 at p. 9).  Mr. Meidinger was then asked: "And that's the same thing you would have thought, and you had been at the landfill for seven years; right?"  Id.  Mr. Meidinger responded: "Correct."  Id.  This does not clarify Mr. Meidinger's understanding of alternate cover because it is unclear whether he was answering "correct" to the first question, that he understood alternate cover to be sawdust only, or whether he was answering "correct" to the fact he worked

at the landfill for seven years.  Nonetheless, whether Mr. Meidinger believed sawdust was the only alternate cover does not excuse Mr. Ragnone's testimony because Mr. Ragnone allegedly knew prior to testifying before the grand jury that sawdust was not the only alternate cover.  When giving Mr. Meidinger the benefit of all reasonable inferences, Mr. Ragnone's allegedly false testimony regarding alternate cover tends to prove Mr. Meidinger was indeed the inside man.

Mr. Meidinger also contends Mr. Ragnone falsely told the grand jury he confessed to accepting money in exchange for cutting breaks to Fish drivers.  While Mr. Meidinger told Mr. Ragnone he accepted money from Fish drivers on a couple of occasions, he never confessed to taking the money in exchange for giving breaks to Fish drivers.  Rather, Mr. Meidinger told Mr. Ragnone he took the money around Christmastime and that he never intentionally allowed Fish drivers to dump at a reduced or free rate.

When Mr. Meidinger was asked about cutting breaks to Fish drivers on alternate cover loads, Mr. Meidinger responded "I don't know if I've been cutting breaks or not.  I just – what they tell me is what I use as the material ID." (Docket 95-1 at p. 14).  Mr. Meidinger disagreed with Mr. Ragnone when asked if he cut Fish drivers breaks because they were friends.  Id. at p. 25.  Mr. Meidinger stated he never intentionally gave Fish drivers breaks at the scale. Id. at p. 41.

8

Viewing these facts in the light most favorable to Mr. Meidinger, "[a] jury could . . . conclude [Mr.] Ragnone inappropriately accepted that Mr. Meidinger confessed or that [Mr.] Ragnone intentionally testified falsely when he testified that [Mr.] Meidinger confessed." (Docket 90 at p. 23). Additionally, a jury could conclude Mr. Ragnone inappropriately accepted that sawdust was the only alternate cover material or that he intentionally testified falsely about alternate cover. These issues require the weighing of evidence and credibility determinations and are not appropriately resolved on summary judgment. See Quick v. Donaldson Co., 90 F.3d 1372, 1376-77 (8th Cir. 1996) ("At the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter."). The court finds the magistrate judge did not error in denying Mr. Ragnone's motion for summary judgment on Mr. Meidinger's Fourth Amendment claims. Defendants' objection is overruled

## E.   PLAINTIFF'S OBJECTIONS

### 1.   Whether the magistrate judge erred in finding the City of Rapid City, Sam Kooiker, John Leahy, and Steve Allender are entitled to qualified immunity.

Mr. Meidinger contends his substantive due process rights were violated by defendants' reckless investigation and the manufacturing of false evidence, including ignoring exculpatory evidence, failing to conduct a complete investigation and fabricating or falsifying evidence. (Docket 93 at pp. 4-15).

"[A] due process right against a reckless investigation was clearly established in 1986." Winslow, 696 F.3d at 739 (citations omitted). "To establish a constitutional violation based on an inadequate investigation, a plaintiff must show that the defendant officer's 'failure to investigate was intentional or reckless, thereby shocking the conscience.'" Id. at 732 (quoting Cooper v. Martin, 634 F.3d 477, 481 (8th Cir. 2011)). The United States Court of Appeals for the Eighth Circuit held "'that the following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence.'" Id. (quoting Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009)). "Mere negligent failure to investigate, such as failing to follow up on additional leads, does not violate due process." Id.

"While a reckless investigation claim may be supported by proof that investigators exerted 'systematic pressure to implicate the defendant in the face of contrary evidence,' a manufactured false evidence claim requires proof that investigators deliberately fabricated evidence in order to frame a criminal defendant." Id. (quoting Akins, 588 F.3d at 1184. "[A] failure to investigate claim may be inextricably bound with a false evidence claim, where the

10

Plaintiffs' theory is that investigators recognized deficiencies in a case and manufactured false evidence to fill those gaps." Id.

The magistrate judge found Steve Allender, John Leahy, Sam Kooiker, and the City of Rapid City were protected by qualified immunity and entitled to summary judgment.

### a.    Steve Allender

The magistrate judge concluded Mr. Allender was protected by qualified immunity and is entitled to summary judgment because "[h]e had no direct involvement in the investigation . . . did not testify . . . [and] [t]here was no evidence of any conduct by Allender which deprived Meidinger of any constitutional right." (Docket 90 at p. 32).

In reviewing Mr. Meidinger's complaint, his response to the motion for summary judgment, and his objections to the report and recommendation, the only references to Mr. Allender relate to the fact he supported his employee, Mr. Ragnone.  Mr. Meidinger failed to show how Mr. Allender violated his constitutional rights.  Even viewing the facts in a light most favorable to Mr. Meidinger, there is no evidence which supports that conclusion.  The court finds Mr. Allender is entitled to summary judgment.

### b.    John Leahy

Mr. Meidinger contends Mr. Leahy knew sawdust was not the only alternate cover material and also knew Kieffer Sanitation delivered a significant amount of alternate cover to the landfill but had no contract to haul sawdust.

11

(Docket 93 at p. 3).  Mr. Meidinger alleges Mr. Leahy attributed the entry of incorrect truck tare weights to him when, in fact, other scale attendants entered those weights after Mr. Meidinger.  Id.  Mr. Meidingher alleges Mr. Leahy's theory about manipulated truck weights bolstered Mr. Ragnone's fraud theory and subjected Meidinger to systematic implication in the fraud allegations.

The magistrate judge found there was no evidence Mr. Leahy fabricated any evidence, but "[a]t most . . . misinterpreted facts."  (Docket 90 at p. 32).  The court agrees with the magistrate judge's assessment.  Mr. Leahy's testimony before the grand jury was that there was "no other significant fraud at the landfill."  Id. at p. 10.  Mr. Meidinger produced no evidence this testimony was false and no evidence to suggest Mr. Leahy believed his testimony was false.  With regard to the definition of alternate cover, Mr. Leahy told Mr. Ragnone in an e-mail prior to Mr. Ragnone testifying before the grand jury that alternate cover included materials other than sawdust.  There is no evidence Mr. Leahy fabricated the definition of alternate cover in order to implicate Mr. Meidinger.

Viewing the facts in a light most favorable to Mr. Meidinger, there is no evidence to support the conclusion Mr. Leahy fabricated or manufactured evidence.  Mr. Leahy may have been negligent in the way he handled certain matters, including investigating other employees at the landfill, but "[m]ere negligent failure to investigate, such as failing to following up on additional

leads, does not violate due process." Winslow, 696 F.3d at 732.  Mr.
Meidinger's objections are overruled.

### c.    Sam Kooiker

The magistrate judge found that "[w]hile Kooiker was the instigator of the
investigation and while he made [the] landfill fraud issue the centerpiece of his
campaign for mayor, he did not deprive Meidinger of any constitutional right."
(Docket 90 at p. 33).  Mr. Meidinger contends "[Mr.] Kooiker pressed for a
criminal investigation, identifying Meidinger as the inside man" even after he
was told by "Landfill officials that his information [about illegal activity at the
landfill] was unfounded."  (Docket 93 at p. 3).  Mr. Meidinger asserts "Kooiker
as mayor continued to pursue a civil suit against Meidinger after Meidinger's
acquittal" on the criminal charges.  Id.

Other than turning over the investigation to police, Mr. Kooiker was not
involved in the investigation.  There is no evidence Mr. Kooiker fabricated or
manufactured any evidence which was used against Mr. Meidinger.  Although
Mr. Kooiker may have believed Mr. Meidinger was involved in illegal activity at
the landfill, this is not a violation of a constitutional right.  The court finds Mr.
Kooiker is entitled to qualified immunity.  Mr. Meidinger's objection is
overruled.

### d.    Conspiracy

"To prove a § 1983 conspiracy claim against a particular defendant, the
plaintiff must show: that the defendant conspired with others to deprive him or

her of a constitutional right; that at least of one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999) (internal citations omitted).

Based on the evidence in this case, Mr. Meidinger contends "a jury could reasonably infer that the conspiracy to falsely implicate Meidinger began immediately when Kooiker met with Ragnone; that Ragnone took an overt act in that direction with the false confession less than 10 days later; and less than 15 days later, Leahy acts overtly to implicate Meidinger." (Docket 93 at p. 17).

Having reviewed the evidence in this case, the court agrees with the magistrate judge's recommendation that Mr. Meidinger's conspiracy claim fails as a matter of law. There is no evidence to suggest Mr. Kooiker, Mr. Allender, Mr. Leahy, or anybody else persuaded Mr. Ragnone to testify the way he did before the grand jury. "To advance past the summary judgment stage, [a plaintiff] must 'allege with particularity and specifically demonstrate material facts that the defendants reached an agreement.'" Reasonover v. St. Louis Cnty., Mo., 447 F.3d 569, 582 (8th Cir. 2006) (citing Marti v. City of Maplewood, 57 F.3d 680, 685 (8th Cir. 1995)). No evidence of an agreement exists.

"A commonly held belief that a crime has been committed is not a conspiracy. Various people engaged in investigating and reporting suspected criminal activity does not amount to conspiracy. [The court must] look for a genuine factual issue of concerted activity toward an unlawful objective."

14

Myers v. Morris, 810 F.2d 1437, 1454 (8th Cir. 1987), overruled on other grounds by Burns v. Reed, 500 U.S. 478 (1991).

Mr. Meidinger has not produced any evidence to show the various parties cooperated with each other in a scheme to either get Mr. Ragnone to testify falsely, to advance Mr. Ragnone's career, to advance Mr. Leahy's career, or to advance Mr. Kooiker's career.  Furthermore, there is no evidence any of these individuals did not genuinely believe Mr. Meidinger was the inside man at the landfill.  The court concludes Mr. Meidinger's conspiracy claim fails as a matter of law.  Mr. Meidinger's objection is overruled.

### e.    City of Rapid City: Monell Claim

A city "may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).  When a municipal custom or policy caused the deprivation of a constitutional right, the municipality may be held liable.  Id. at 690-91.  In this case, Mr. Meidinger must show that "the action that is alleged to be unconstitutional implements or executes a policy statement, . . . officially adopted and promulgated by the municipality's officers or that a constitutional deprivation was visited pursuant to government custom even though such a custom has not received formal approval through the

body's official decisionmaking channels." <u>Marchant v. City of Little Rock, Arkansas</u>, 741 F.2d 201, 204 (8th Cir. 1984) (citing <u>Monell</u>, 436 U.S. at 690-91) (internal quotation marks omitted).

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." <u>Monell</u>, 436 U.S. at 691 (emphasis in original).  Liability may be imposed against a municipality for a single decision by a policymaker who has final decision making authority in that area of the government's business.  <u>Slimgen v. City of Rapid City</u>, 83 F. Supp. 2d 1061, 1066 (D.S.D. 2000) (citing <u>Pembauer v. City of Cincinnati</u>, 475 U.S. 469, 478 (1986)).

Mr. Meidinger argues Mr. Kooiker initiated the investigation by turning it over to the City Attorney and police after he was told by landfill officials that no illegal activity was occurring at the landfill.  (Docket 93 at p. 22).  Mr. Meidinger contends the other defendants, including Mr. Leahy and Mr. Ragnone, "fabricated and manufactured evidence to implicate Meidinger to establish the public corruption case as envisioned by Kooiker."  <u>Id.</u>

As discussed above, neither Mr. Leahy nor Mr. Kooiker fabricated or manufactured evidence.  Furthermore, there is no evidence the other defendants had anything to do with Mr. Ragnone's allegedly false testimony in front of the grand jury.  As noted by the magistrate judge, even if the court assumes Mr. Kooiker, Mr. Leahy, Mr. Allender, and Mr. Ragnone's belief was

16

that Mr. Meidinger was the inside man, "[t]here is no evidence to support the conclusion that either a policy maker for the city had anything to do with Ragnone's allegedly false testimony or that it was a policy of the city for its police officers to testify falsely to a grand jury in this single instance or as a matter of custom." (Docket 90 at p. 35).  The City of Rapid City is not liable for the conduct of its employee, Mr. Ragnone.  Mr. Meidinger's objection is overruled.

> **2.    Whether the magistrate judge erred in finding Peter Ragnone was entitled to qualified immunity as to plaintiff's Fourteenth Amendment claims against him.**

Mr. Meidinger contends the magistrate judge erred in concluding "that other than Ragnone's testimony about the confession and sawdust, 'there is no potentially material, predicate false or manufactured evidence from Ragnone's investigation which was used to persuade the grand jury to indict Meidinger.' " (Docket 93 at p. 5) (quoting Docket 90 at p. 17-18).  Contrary to the magistrate judge's conclusion, Mr. Meidinger contends there is "ample evidence of fabricated evidence produced during the investigation." (Docket 93 at p. 5).

Mr. Meidinger primarily relies on <u>Moran</u> to argue his reckless investigation claim under the Fourteenth Amendment against Mr. Ragnone. <u>Moran</u> was a case where police mistakenly thought a mentally impaired teenager was caught in the act of burglary.  <u>Moran</u>, 296 F.3d at 639.  As a result of mistake the teenager was beaten, leaving him with severe lacerations and a broken ankle.  <u>Id.</u> at 640.  Shortly after the incident, the police chief

publically acknowledged the mistake and was committed to punishing the wrongdoers.  Id.  Moran, a sergeant with the police department, became the chief suspect in the investigation, was charged criminally and was acquitted at trial.  Id. at 640-42.  Moran then filed suit against the police department alleging malicious prosecution and a violation of his substantive due process rights.  Id. at 642.

In Moran, the Eighth Circuit recognized that "when a person is damaged by outrageous police misconduct but the resulting injury does not neatly fit within a specific constitutional remedy, the injured party may, depending on the circumstances, pursue a substantive due process claim under section 1983."  Id. at 646.  In reviewing the facts of the case, the Eighth Circuit concluded that Moran "offer[ed] evidence of a purposeful police conspiracy to manufacture, and the manufacture of, false evidence."  Id. at 647.

> Instead of simply allowing a weakly supported prosecution to proceed, Moran correctly asserts that the evidence can be read to show acts designed to falsely formulate a pretense of probable cause.  Although the Fourth Amendment covers seizures, which would be satisfied by Moran's arrest, law enforcement's intentional creation of damaging facts would not fall within its ambit.

Id.  Specifically, the court found "officials purposely conspired to manufacture evidence in order to make [Moran] an innocent scapegoat for a devastating travesty that embarrassed the police department and its managers, and evidence that the executive actions may have been partially undertaken to

18

protect other, more favored, employees in the department." Id.  The court

concluded:

> [Moran] introduced evidence that tend[ed] to show a police
> department that publicly and financially committed itself to
> producing a culprit for an alleged wrongdoing before any such
> wrongdoing was actually established.  [Moran] produced proof
> of questionable procedures, of pressures placed on officers to
> incriminate a specific person or corroborate the department's
> official line, of a hasty condemnation of Moran and of improper
> consideration of his race.  Moreover, [Moran] offered proof that,
> at various times, certain defendants purposely ignored evidence
> that strongly tended to exonerate him.

Id. at 647-48.

Mr. Meidinger argues his case is similar to Moran because he is alleging

Mr. Ragnone and others fabricated and manufactured evidence which can " 'be

read to show acts designed to falsely formulate a pretense of probable cause'

. . . [and therefore his] case [falls] within the sphere of the Due Process Clause."

(Docket 93 at p. 6).

Despite Mr. Meidinger's claims, the court finds Moran is distinguishable

on several grounds.  First, the Eighth Circuit concluded the facts of Moran did

not neatly fit within the protections provided under the Fourth Amendment.

Moran, 296 F.3d at 647.  Here, Mr. Meidinger's claims neatly fall within the

protections afforded under the Fourth Amendment and the court has held Mr.

Ragnone is not entitled to summary judgment under that standard.  See

Albright, 510 U.S. at 288 (Souter, J., concurring) (finding substantive due

process should be reserved for otherwise "homeless substantial claims" and

noting "the Court has resisted relying on the Due Process Clause when doing

so would have duplicated protection that a more specific constitutional provision already bestowed"). Second, unlike the facts in Moran, there is no evidence Mr. Ragnone pressured any witnesses to incriminate Mr. Meidinger or corroborate Mr. Ragnone's theory of the case. Third, there is no evidence the police department or any other entity committed itself publically and financially to frame Mr. Meidinger prior to any investigation into potential wrongdoing. Mr. Meidinger contends Mr. Kooiker identified him as the wrongdoer and then turned his name over to the police department. However, Mr. Ragnone personally observed Mr. Meidinger at his place of employment and interviewed several witnesses, including Mr. Meidinger, before criminal charges were brought. Unlike Moran, Mr. Meidinger had the opportunity to explain his side of the story during his interview with Mr. Ragnone.

The court agrees with the magistrate judge's conclusion that Mr. Meidinger has not offered sufficient evidence to support his theory of a police conspiracy to manufacture evidence designed to falsely formulate a pretense of probable cause to deprive him of his liberty.[2] The fact Mr. Ragnone focused his investigation on Mr. Meidinger does not make his investigation reckless, nor does it shock the conscience. Additionally, that Mr. Ragnone focused his investigation on Fish Garbage and not Kieffer is not evidence of a reckless

---

[2]Mr. Meidinger contends the State's expert created a false or manufactured exhibit which incorrectly identified Meidinger working the scales at the dump when he was not, in fact, working. However, the exhibit also contained correct information. At most, this constitutes a negligent investigation and does not rise to the level of a reckless investigation. There is no evidence related to the creation of this exhibit which tends to support a conclusion it was intentionally falsified to incriminate Mr. Meidinger.

investigation.  See Winslow, 696 F.3d at 732 ("Mere negligent failure to investigate, such as failing to follow up on additional leads, does not violate due process.").  Finally, Mr. Meidinger's argument related to Mr. Ragnone's use of Don Anderson, a confidential informant who worked for Fish, is misplaced.  Mr. Anderson never implicated Mr. Meidinger as the inside man at the landfill.  (Docket 66) (identifying persons involved in suspicious activity between Fish Garbage Service and the landfill as Cliff Fish, Chuck Cordes and Steve Pope).  It is difficult to see how a confidential informant who did not identify Mr. Meidinger as the inside man violates Mr. Meidinger's constitutional rights.  This is particularly true when the information provided by Mr. Anderson was accurate.

The court finds the report and recommendation related to Mr. Ragnone is an accurate and thorough recitation of the law and facts involved in this case.  Viewing the facts in a light most favorable to Mr. Meidinger, the court finds there is insufficient evidence to support a reckless investigation claim against Mr. Ragnone.  Mr. Meidinger's objection is overruled.

## F.    MOTION TO DISMISS

The magistrate judge concluded defendant Sam Kooiker was not entitled to legislative immunity and recommended denying Mr. Kooiker's motion to dismiss.  (Docket 90).  Mr. Kooiker objects to this finding.  Despite the objection, the court does not need to reach this issue because the court determined Mr. Kooiker is entitled to qualified immunity.  Defendant Kooiker's objection is moot.

## ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiff's objections (Docket 93) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that defendants' objections (Docket 94) to the report and recommendation are overruled in part and moot in part.

IT IS FURTHER ORDERED that the report and recommendation (Docket 90) is adopted in accordance with the analysis above.

IT IS FURTHER ORDERED that defendants' motion for summary judgement (Docket 38) is granted in part and denied in part.

IT IS FURTHER ORDERED that defendant Sam Kooiker's motion to dismiss (Docket 44) is denied as moot.

Dated September 23, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

22